1  SEDGWICK LLP
   STEPHANIE SHERIDAN (Bar No. 135910)
2  stephanie.sheridan@sedgwicklaw.com
   KIRK C. JENKINS (Bar No. 177114)
3  kirk.jenkins@sedgwicklaw.com
   333 Bush Street, 30th Floor
4  San Francisco, California  94104-2835
   Telephone:  (415) 781-7900
5  Facsimile:   (415) 781-2635

6  *Attorneys for Defendant*
   ALERE HOME MONITORING, INC.

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11  JOHN FALKENBERG and STEVEN          Case No. 3:13-cv-00341-JST
    INGARGIOLA, on behalf of themselves and all
12  others similarly situated,          **ALERE HOME MONITORING, INC.'S**
                                        **NOTICE OF MOTION AND MOTION**
13                    Plaintiffs,       **TO DISMISS PLAINTIFFS' CLASS**
                                        **ACTION COMPLAINT;**
14         v.                           **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT THEREOF**
15  ALERE HOME MONITORING, INC.,
                                        Date:        January 8, 2015
16                    Defendant.        Time:        2:00 p.m.
                                        Courtroom:   9, 19th Floor
17                                      Judge:       Hon. Jon S. Tigar

18

19

20

21

22

23

24

25

26

27

28

19674391v1

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ....................................1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ......................2

      A.    Plaintiffs' Original Complaint .............................3

      B.    Alere's First Motion to Dismiss and Strike ..............4

      C.    The Court Dismisses Plaintiffs' Complaint in All Respects....................4

      D.    The Plaintiffs' First Amended Complaint.................5

III.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE
      12(B)(6)........................................................................6

      A.    Plaintiffs Must Allege Sufficient Factual Matter to State a Claim for
            Relief That is Plausible on Its Face........................6

IV.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE
      THEY HAVE FAILED TO STATE A CLAIM AGAINST ALERE................7

      A.    Plaintiffs Cannot State A Claim For Violation Of The CMIA .............7

            1.    To State a Claim, Plaintiffs Must Plead Not Only That Alere
                  Negligently Lost Possession of Their CMI, But That Their
                  CMI Was Viewed by Unauthorized Third Parties.....................8

            2.    Plaintiffs Do Not and Cannot Plead That Alere Affirmatively
                  Disclosed Their CMI to Any Unauthorized Person.....................9

            3.    Plaintiffs State No Claim With Respect to Falkenberg
                  Because They Do Not Allege That His CMI Was Viewed By
                  Any Unauthorized Person..................................................9

            4.    Plaintiffs State No Claim With Respect to Ingargiola.............10

            5.    Plaintiffs' CMIA Claim Also Fails Because They Have Not
                  Plead And Cannot Prove Injury.......................................13

V.    PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF THE
      FCRA...............................................................................16

VI.   CONCLUSION..........................................................................18

Sedgwick LLP

1

## TABLE OF AUTHORITIES

2

<u>Page</u>

3

### Cases

4

5

*Aas v. Super. Ct.*
  24 Cal. 4th 627 (2000) ............................................................. 14, 16

6

*Abbott v. Federal Forge, Inc.*
  912 F.2d 867 (6th Cir. 1990) .................................................... 11

7

8

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) .......................................................... 6, 7, 10, 11

9

*Barrett v. Dickerson*
  -- F.Supp.3d --, 2014 WL 3725290 (N.D. Cal. 2014) ............... 11

10

11

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) .................................................................. 6, 10, 11

12

*Blantz v. Calif. Dept. of Corrections and Rehabilitation*
  727 F.3d 917 .............................................................................. 10

13

14

*Brantley v. NBC Universal, Inc.*
  675 F.3d 1192 (9th Cir. 2012) .................................................. 7, 13

15

16

*Chuisano v. Secy. of Health & Human Servs.*
  -- Fed. Cl. --, 2013 WL 6234660 (Fed. Cl. 2013) ...................... 11

17

*Doe v. Green*
  593 F.Supp.2d 523 (W.D.N.Y. 2009) ........................................ 11

18

*Duarte v. Zachariah*
  22 Cal. App. 4th 1652 (1994) .................................................... 14

19

20

*Ecological Rights Found. v. Pacific Gas & Elec. Co.*
  713 F.3d 502 (9th Cir. 2013) .................................................... 10

21

*Fayer v. Vaughn*
  649 F.3d 1061 (9th Cir. 2011) .................................................. 7

22

23

*Fields v. Napa Milling Co.*
  164 Cal. App. 2d 442 (1958) ..................................................... 14

24

*Guinn v. AstraZeneca Pharm., LP*
  602 F.3d 1245 (11th Cir. 2010) ................................................ 11

25

26

*Hartmann v. Cal. Dept. of Corrections and Rehabilitation*
  707 F.3d 1114 (9th Cir. 2013) .................................................. 7, 13

27

*Huskey v. City of San Jose*
  204 F.3d 893 (9th Cir. 2000) ................................................... 11

28

*In re Century Aluminum Co. Securities Litig.*
729 F.3d 1104 (9th Cir. 2013) ................................................................. 7, 13

*In re Rigel Pharm., Inc. Securities Litig.*
697 F.3d 869 (9th Cir. 2012) ..................................................................... 10

*Krottner v. Starbucks Corp.*
406 Fed. App'x. 129 (9th Cir. 2010) .......................................................... 15

*Lacey v. Maricopa County*
693 F.3d 896 (9th Cir. 2012) ....................................................................... 7

*Levitt v. Yelp! Inc.*
765 F.3d 1123 (9th Cir. 2014) ..................................................................... 6

*Lierboe v. State Farm Mut. Auto. Ins. Co.*
350 F.3d 1018 (9th Cir. 2003) ................................................................... 10

*Loder v. City of Glendale*
14 Cal. 4th 846 (1997) ................................................................................. 7

*Maya v. Centex Corp.*
658 F.3d 1060 (9th Cir. 2011) ................................................................... 10

*O'Shea v. Littleton*
414 U.S. 488 (1974) ................................................................................... 10

*Pisciotta v. Old Nat'l Bancorp*
499 F.3d 629 (7th Cir. 2007) ..................................................................... 15

*Potter v. Firestone Tire and Rubber Co.*
6 Cal. 4th 965 (1993) .......................................................................... 14, 15

*Regents of the Univ. of Cal. v. Super. Ct.*
220 Cal.App.4th 549 (2013) .............................................................. 8, 9, 15

*Retail Property Trust v. United Brotherhood of Carpenters and Joiners of Am.*
768 F.3d 938 (9th Cir. 2014) ....................................................................... 6

*Ruiz v. Gap, Inc.*
622 F. Supp. 2d 908, *aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010) ....... 15, 16

*Schneider v. Sutter Amador Hosp.*
-- F.Supp.3d --, 2014 WL 5473545 (E.D. Cal. 2014) ............................... 11

*Sessoms v. Williamson*
2014 WL 555317 (N.D. Cal. 2014) ........................................................... 11

*Somers v. Apple, Inc.*
729 F.3d 953 (9th Cir. 2013) ................................................................. 7, 13

*Steshenko v. Gayrard*
-- F.Supp.3d --, 2014 WL 4904424 (N.D. Cal. 2014) ............................... 11

*Surabian v. HSBC Bank USA, NA*
-- F.Supp.3d --, 2014 WL 1035235 (D. Mass. 2012) ............................... 11

19674391v1

Sedgwick

*Sutter Health v. Super. Ct.*
227 Cal.App.4th 1546 (2014) ............................................................................................... 8, 9

*Warth v. Seldin*
422 U.S. 490 (1975) ................................................................................................................. 10

## Statutes

Business & Professions Code
§ 17200 ........................................................................................................................................ 3

Cal. Civ. Code
§ 56 .............................................................................................................................................. 1
§ 56.10 ..................................................................................................................................... 7, 8
§ 56.101 ................................................................................................................................... 7, 8
§ 56.36 ......................................................................................................................................... 7
§ 56.36(b) ............................................................................................................. 7, 8, 13, 16

Fed. R. Civ. P.
Rule 12(b)(6) ......................................................................................................................... 2, 6

15 U.S.C.
§ 1681a(d)(1) ............................................................................................................................ 17
§ 1681a(f) ............................................................................................................................. 16, 17

## Other Authorities

Erika Harrell & Lynn Langton, *Victims of Identity Theft 2012,* U.S. Dept. of Justice
Bureau of Justice Statistics, p. 1 ................................................................................. 11, 12

Open Security Foundation, *Data Breach Quick View,* p. 1 ......................................... 12

Prosser on Torts, 2d ed., p. 165 ......................................................................................... 14

Memorandum of Points and Authorities in Support of Motion to Dismiss – Case No. 3:13-cv-00341-JST

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 8, 2015 at 2:00 p.m., or as soon thereafter as the matter may be heard, in Courtroom 9 of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California, 94102, defendant Alere Home Monitoring, Inc. ("Alere") will and hereby does move for an order pursuant to Fed. R. Civ. P. 12(b)(6) dismissing the action brought by plaintiffs John Falkenberg and Steven Ingargiola ("plaintiffs").

This motion is made on the ground that plaintiffs have failed to state a claim upon which relief can be granted. This motion is based on this notice of motion and the accompanying memorandum of points and authorities, and the request for judicial notice filed herewith, the complaint and other documents filed in this action, and on such other and further matters as may be presented to the Court at or prior to the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

This is not a case about data encryption or a data security breach. Rather, this case arises out of the theft of a password-protected laptop computer from the locked car of an Alere employee outside of a restaurant, along with other personal items, including a child's car seat and diaper bag (hardly the *modus operandi* of sophisticated data thieves). The employee filed a report with the police, but the laptop was never recovered. RJN, Exs. A-C (sample letter sent to enrollees about laptop theft and incident report).

This laptop, which was protected by a strong password, contained information about patients enrolled in Alere's medical monitoring services. RJN, Exs. A-D. Alere complied with its legal obligations and informed all affected persons about the laptop theft, and also offered to pay for one year of credit monitoring. RJN, Exs. A-B. Plaintiffs contend that they were among the patients who received this notification, and whose personal and medical information was on the laptop. Plaintiffs seek to recover a $1,000 statutory penalty for themselves and a putative class of approximately 116,000 others (a staggering total of *$116 million*) from Alere under California's Confidentiality of Medical Information Act ("CMIA"), Cal. Civ. Code § 56 *et seq.* ("the CMIA" or "Act") as a result of the theft by a third party of a single piece of password-

Sedgwick LLP

1   protected company property.  That cannot be the result intended by the CMIA, especially given

2   that plaintiffs cannot plausibly allege that their confidential information has been viewed by any

3   unauthorized third parties in the nearly two years since the incident.

4       Alere requests, pursuant to Fed. R. Civ. P. 12(b)(6), that this Court dismiss plaintiffs'

5   complaint in its entirety.

6       Plaintiffs have failed to state a claim under the CMIA, because they have not alleged that

7   their personal health information was disclosed or released via an affirmative communication by

8   Alere to an unauthorized third party.

9       Even if the plaintiffs need not allege an affirmative act of disclosure by Alere, they still

10  fail to state a claim.  Plaintiffs fail to allege that plaintiff John Falkenberg's confidential medical

11  information has been viewed by any unauthorized third party.  Plaintiffs' allegations are

12  inadequate with respect to plaintiff Steven Ingargiola as well.  Plaintiffs allege that Alere's

13  purported negligence caused a disclosure of Ingargiola's confidential medical information

14  ("CMI") because he experienced an episode of identity theft after the theft of the laptop.  But

15  temporal proximity alone does not plausibly allege causation, given that plaintiffs offer no

16  factual context to suggest a causal link between the laptop theft and the identity theft.  Further,

17  plaintiffs cannot state a claim for relief under the CMIA because they fail to allege that they have

18  suffered compensable damages as a result of Alere's alleged negligence.

19      Finally, plaintiffs cannot state a claim under the Fair Credit Reporting Act ("FCRA")

20  because Alere is not a "consumer reporting agency" within the meaning of the FCRA, nor does

21  Alere provide "consumer reports" as defined by the statute.

22  **II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

23      Plaintiffs have now attempted twice to state a claim against Alere as a result of the theft

24  from a locked car of a company employee's laptop.  When all the plaintiffs' rhetoric about

25  Alere's remedial measures and the purported future risk of identity theft is swept away, what

26  Alere said in its original motion to dismiss remains true: plaintiffs' only real contention is that

27  Alere should be liable to them for $116 million despite their lack of any non-speculative injuries

28

1  – because Alere did not separately encrypt patients' CMI on a password-protected laptop.  (First

2  Amended Complaint, ("FAC"), ¶ 6.)

3       **A.**    **Plaintiffs' Original Complaint**

4       Plaintiffs filed their original complaint in January 2013.  Plaintiffs John Falkenberg and

5  Steven Ingargiola alleged that they were among the 116,000 patients whose CMI was contained

6  on the laptop stolen from an Alere employee's locked vehicle in September 2012, only four

7  months earlier.  (Complaint, ¶¶ 4, 14, 18.)  Plaintiffs complained that Alere had failed to encrypt

8  the patients' CMI, and that "identity thieves" could "easily circumvent" the laptop's password

9  protection.  (*Id.*, ¶ 6.)

10       Plaintiffs did not allege that the password-protected information on the stolen computer's

11  hard drive was affirmatively released to the thief by Alere, or even that any of the password-

12  protected information had been viewed by the thief or any other unauthorized third party.  Nor

13  did plaintiffs allege that the CMI that happened to be contained on the computer's hard drive was

14  the reason for the theft.  Nor did plaintiffs allege that they had suffered any actual damages from

15  the purported misuse of their CMI.

16       Instead, they simply speculated that potential misuses might not manifest for several

17  years, and they were entitled to "nominal" damages of $1,000 per violation because of the

18  potential harm that might flow from this incident.  Based on these allegations, plaintiffs sought to

19  represent a class of more than 116,000 persons, consisting of "[a]ll persons whose confidential

20  personal and medical information was contained on the laptop stolen from an Alere employee's

21  vehicle in September 2012."  (Complaint ¶ 31.)  They alleged they were entitled to over $100

22  million in "nominal damages" under the CMIA without any allegation whatsoever that Alere

23  affirmatively released their information to a third party, or that plaintiffs have suffered, or will

24  ever suffer, any injury-in-fact.

25       Based upon these allegations, plaintiffs purported to state claims for relief under the

26  CMIA, for negligence, for money had and received and unjust enrichment, for willful and

27  negligent violation of the Fair Credit Reporting Act ("FCRA"), and for violations of California's

28  Unfair Competition Law (Business & Professions Code § 17200 *et seq.*)

Sedgwick LLP

**B.      Alere's First Motion to Dismiss and Strike**

Alere moved to dismiss the complaint, and in the alternative, to strike the class allegations.

Alere moved to dismiss the plaintiffs' claims under the CMIA on the grounds that to allege a claim under the statute, plaintiffs were required to plead that Alere had affirmatively released plaintiffs' CMI.  Plaintiffs made no allegation that any unauthorized third party had viewed their CMI, let alone that such viewing occurred as a result of Alere's affirmative disclosure of their information.  (Alere's First Motion to Dismiss, pp. 6-10.)  Alere further challenged the plaintiffs' CMIA claim on the grounds that plaintiff had failed to allege any injury proximately caused by the incident.  (*Id.*, pp. 10-11.)

Alere moved to dismiss plaintiffs' claim for violation of the FCRA on the grounds that Alere is not a "consumer reporting agency" within the meaning of the statute, nor is the personal and medical information maintained by Alere a "consumer report" under the FCRA.  (*Id.*, pp. 16-18.)  Alere moved to dismiss each of plaintiffs' remaining claims as well.  (*Id.*, pp. 11-16, 18-23.)

At the same time, Alere moved to strike plaintiffs' class allegations on two grounds.  First, Alere demonstrated that the CMIA did not authorize plaintiffs to proceed by class actions.  Second, Alere showed that the CMIA should be narrowly construed to bar class actions because otherwise, the statute violated fundamental due process principles barring excessive punishments and fines.  (Alere's Motion to Strike.)

**C.      The Court Dismisses Plaintiffs' Complaint in All Respects**

The Court dismissed the plaintiffs' complaint.  The Court held that plaintiffs could not state a claim for relief under the CMIA absent allegations that their CMI had been actually viewed by an unauthorized third party.  Because plaintiffs conceded that they were able to make no such allegations, their claim under the CMIA failed.  (Dkt. No. 46, pp. 4-5.)

The Court dismissed the plaintiffs' claims under the FCRA as well.  The Court found that even if the information Alere collects and maintains was within the intended scope of the FCRA – a point the Court found "doubtful" – the plaintiff had not adequately alleged that such

Sedgwick

1    information was kept for the purpose of furnishing consumer reports, as defined by the statute, to

2    third parties.  (*Id.*, pp. 5-6.)  Accordingly, plaintiffs' claims failed.

3            The Court dismissed plaintiffs' claims for negligence, the Unfair Competition Law,

4    money had and received and unjust enrichment as well.  (*Id.,* pp. 6-9.)  Given that the Court had

5    dismissed plaintiffs' complaint in its entirety, the Court denied Alere's motion to strike without

6    prejudice on grounds of mootness.  (*Id.*, p. 9.)

7            The Court granted plaintiffs leave to amend their complaint.  However, noting the

8    plaintiffs' belated claim to have found an affected patient who had subsequently suffered identity

9    theft, the Court expressly declined to authorize them to add a new or replacement party plaintiff.

10   If the plaintiffs chose to do so, "they must make the appropriate motion on the docket, and give

11   Alere notice and the opportunity to oppose the motion."  (*Id.*, p. 10.)

12           **D.      The Plaintiffs' First Amended Complaint**

13           Plaintiffs filed their First Amended Complaint on October 28, 2014.  Although the FAC

14   makes passing reference in its first paragraph to purported claims under the UCL and "common

15   law," the only claims the plaintiffs attempt to state in the FAC are under the CMIA, and for

16   willful and negligent violation of the FCRA.  (FAC, ¶¶ 54-97.)  The plaintiffs repeat many of the

17   same allegations they made in the original complaint, such as their extensive discussion of the

18   purported risk of identity theft, and the speculative harms that can flow from such thefts when

19   they occur.  (Id., ¶¶ 16-33.)

20           Plaintiffs' FAC remains devoid of any factual allegations showing that unauthorized third

21   parties actually viewed any patients' CMI contained on the stolen laptop.  Instead, plaintiffs

22   make only equivocal and conclusory allegations entirely lacking in factual context: Alere "likely

23   disclosed and released" CMI, and third party criminals accessed and viewed plaintiffs' CMI

24   "likely because of Alere's negligent disclosure."  (*Id.,* ¶¶ 34-35.)  Plaintiffs do not allege that

25   John Falkenberg has been the victim of identity theft, nor do they allege that an unauthorized

26   third party viewed Falkenberg's CMI.  Indeed, plaintiffs' allegations about Falkenberg are

27   virtually unchanged from the original complaint.

28

1       Plaintiffs' allegations with respect to plaintiff Steven Ingargiola are not much more

2    substantial.  Plaintiffs allege that at some time following the theft of the password-protected

3    laptop, Mr. Ingargiola was the victim of identity theft.  Plaintiffs allege that the identity theft –

4    which apparently consisted of the opening of a single fraudulent account in Ingargiola's name –

5    "was *likely* a direct result of the wrongful disclosure" of plaintiffs' CMI.  (*Id.*, ¶¶ 44-47

6    (emphasis added).)  Plaintiffs allege that this was the first instance of identity theft that

7    Ingargiola had ever experienced.  (*Id.,* ¶ 48.)  Plaintiffs offer no additional factual context, nor

8    do plaintiffs allege that Ingargiola sustained any damages as a result of the alleged fraudulent

9    account.

10       Despite the Court's clear instructions that if the plaintiffs wished to add another plaintiff

11   to their Complaint, they must first seek leave of Court, the plaintiffs include nine paragraphs of

12   allegations about one Carol J. Fertig, a purported member of the proposed Class.  The plaintiffs'

13   allegations about Ms. Fertig are essentially the same as those about Ingargiola – plaintiffs allege

14   that someone opened a single fraudulent account in Ms. Fertig's name "[f]ollowing the

15   September 23, 2012 theft" of the password-protected laptop computer, and that Ms. Fertig had

16   never experienced identity theft before.  (*Id.*, ¶¶ 37-41.)  Once again, plaintiffs offer no

17   additional factual context, nor do they allege that Fertig sustained any damages as a result of the

18   alleged fraudulent account.

19   **III.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(B)(6)**

20       **A.   Plaintiffs Must Allege Sufficient Factual Matter to State a Claim for Relief
              That is Plausible on Its Face**

21

22       To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain

23   sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."

24   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

25   570 (2007)); *Retail Property Trust v. United Brotherhood of Carpenters and Joiners of Am.,* 768

26   F.3d 938, 945 (9th Cir. 2014).  Facial plausibility exists when the plaintiff pleads factual content

27   that allows the court to draw the reasonable inference that the defendant is liable for the

28   misconduct alleged.  *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556; *Levitt v. Yelp! Inc.*, 765

Sedgwick LLP

F.3d 1123, 1135 (9th Cir. 2014); *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013).  The

plausibility standard "asks for more than a sheer possibility that a defendant has acted

unlawfully."  *Iqbal,* 556 U.S. at 678; *Lacey v. Maricopa County*, 693 F.3d 896, 911 (9th Cir.

2012); *Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011).  Where a complaint states facts

that are merely consistent with a defendant's liability, it stops short of the line between

possibility and plausibility of entitlement to relief.  *Somers,* 729 F.3d at 960; *Hartmann v. Cal.*

*Dept. of Corrections and Rehabilitation,* 707 F.3d 1114, 1121-22 (9th Cir. 2013); *Brantley v.*

*NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012).

The Court further explained the applicable standards in *In re Century Aluminum Co.*

*Securities Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013):

> When faced with two possible explanations, only one of which can be true and
> only one of which results in liability, plaintiffs cannot offer allegations that
> are merely consistent with their favored explanation but are also consistent with the
> alternative explanation.   Something  more  is  needed,  such  as  facts  tending  to
> exclude the possibility that the alternative explanation is true, in order to render
> plaintiffs' allegations plausible.

## IV. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE THEY HAVE FAILED TO STATE A CLAIM AGAINST ALERE

### A. Plaintiffs Cannot State A Claim For Violation Of The CMIA

The CMIA was enacted in 1981 to protect the confidentiality of individually identifiable

medical information obtained by certain entities.  *Loder v. City of Glendale,* 14 Cal. 4th 846, 859

(1997).  *See also,* Cal. Civ. Code §§ 56.10, 56.101.   Section 56.36(b) of the Act provides a

private civil remedy, which allows an "individual" to "bring an action" for fixed statutory

damages against a person or entity "who has negligently ***released***" confidential information

"concerning him or her" in violation of the CMIA's provisions.  Section 56.36 was added to the

CMIA in 1999 in response to concerns about the widespread growth of large, commercial

databases of patients' medical conditions, and anecdotal evidence that the ongoing commercial

dissemination of medical information by health care providers was resulting in patients being

harassed or embarrassed based on their medical history.  RJN, Ex. E (Cal. Bill Analysis, S.B. 19

Sedgwick LLP

Assem. Comm. on Judiciary, 7/13/1999, Comments, at 4-5).  To address this concern, Section 56.36 provides for civil and criminal penalties for intentional disclosure of medical information.  The nominal damages provision—at issue here—was added as an author's amendment so that negligent releases might also be deterred.  *Id.* at 9-10.

Plaintiffs allege that Alere is liable to them for nominal damages under Section 56.36(b)'s provisions for the company's purported violations of Sections 56.10 and 56.101 of the Act.  (FAC, ¶¶ 67.)  Plaintiffs contend that the theft of a password-protected, company laptop constitutes a "negligent disclosure" or "release" of their personal health information by Alere to the thief in violation of the CMIA's provisions.  Plaintiffs are mistaken.

> 1. To State a Claim, Plaintiffs Must Plead Not Only That Alere Negligently Lost Possession of Their CMI, But That Their CMI Was Viewed by Unauthorized Third Parties

Two districts of the California Court of Appeal have published opinions in the past year setting forth what a plaintiff must allege in order to state a claim under the CMIA.  Those decisions show that plaintiffs have once again failed to allege a claim.

*Regents of the Univ. of Cal. v. Super. Ct.,* 220 Cal.App.4th 549 (2013) arose from the theft of an encrypted external hard drive during a home invasion robbery.  Although the *Regents* court rejected the argument that a plaintiff must prove that a health care provider affirmatively disclosed a patient's CMI in order to state a claim under the statute, *id.* at 564-65, the court held that merely pleading that the provider had lost possession of the CMI was not sufficient to state a claim.  "What is required is pleading, and ultimately proving, that the confidential nature of the plaintiff's medical information was breached as a result of the health care provider's negligence."  *Id.* at 570.  In other words, in order to state a claim, plaintiffs must plead that their CMI was "accessed by an unauthorized third person."  *Id.* at 565.

*Sutter Health v. Super. Ct.*, 227 Cal.App.4th 1546 (2014) arose from the theft of a password-protected desktop computer from an office of the defendant.  *Id.* at 1552.  The *Sutter Health* court "assume[d] without deciding" that *Regents* was correct in holding that an affirmative communicative act by a health care provider is not required in order for a plaintiff to plead and prove the "disclosure" element of the claim.  *Id.* at 1554-55.  Nevertheless, the court

19674391v1

1  held that a plaintiff cannot state a claim for violation of the CMIA without pleading that the

2  confidentiality of his or her CMI has been breached as a result of the defendant's negligence.  *Id.*

3  at 1556-57.  "No breach of confidentiality takes place until an unauthorized person views the

4  medical information."  *Id.* at 1557.

5          2.    <u>Plaintiffs Do Not and Cannot Plead That Alere Affirmatively Disclosed</u>
              <u>Their CMI to Any Unauthorized Person</u>

6

7          In its memorandum in support of its motion to dismiss plaintiffs' original complaint,

8  Alere argued that in order to sufficiently state a cause of action under the CMIA, plaintiffs must

9  allege that Alere affirmatively disclosed their CMI to unauthorized third parties.  (Memorandum

10 in Support of Motion to Dismiss, pp. 6-10.)  Although the *Regents* court disagreed and the *Sutter*

11 *Health* court declined to take a position, Alere continues to believe that if presented with the

12 issue, the California Supreme Court would hold that a plaintiff cannot state a claim under the

13 CMIA absent allegations of an affirmative communicative act by the defendant disclosing CMI

14 to unauthorized third parties.  In order to clearly preserve its position for any future proceedings,

15 Alere incorporates by reference pages 6-10 of its Memorandum in Support of Motion to Dismiss,

16 Docket Number 18, filed April 12, 2013.

17         But even if a "negligent release[ ]" of CMI can occur without an affirmative

18 communicative act, plaintiffs' First Amended Complaint fails to state a claim under the CMIA.

19         3.    <u>Plaintiffs State No Claim With Respect to Falkenberg Because They Do</u>
              <u>Not Allege That His CMI Was Viewed By Any Unauthorized Person</u>

20

21         As noted above, plaintiffs' FAC contains no allegation that plaintiff John Falkenberg's

22 CMI has been viewed by any unauthorized third party.  (*See, e.g.,* FAC, ¶ 11 (alleging that

23 Falkenberg has suffered the "*risk* of identity theft" and the "*risk* of wrongful use of medical

24 information" (emphasis added).)  Therefore, the FAC fails to adequately state a claim under the

25 CMIA with respect to Falkenberg.  *Sutter Health,* 227 Cal.App.4th at 1555-57; *Regents,* 220

26 Cal.App.4th at 565, 570.

27         Plaintiffs' generalized allegations that "Defendant likely disclosed and released the

28 confidential personal and medical information of Plaintiffs," and that "likely because of Alere's

negligent disclosure, third party criminal accessed and viewed Plaintiffs' . . . CMI" are not sufficient to salvage any claim by Falkenberg.  (FAC, ¶¶ 34-35.)  Stating a claim that is plausible on its face requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 554; *In re Rigel Pharm., Inc. Securities Litig.*, 697 F.3d 869, 875 (9th Cir. 2012); *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).  A complaint will not survive a motion to dismiss "if it 'tenders naked assertions devoid of further factual enhancement.'"  *Blantz v. Calif. Dept. of Corrections and Rehabilitation,* 727 F.3d 917, 927, *quoting Iqbal,* 556 U.S. at 678.  "The Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Ecological Rights Found. v. Pacific Gas & Elec. Co.*, 713 F.3d 502, 511 (9th Cir. 2013), *quoting Iqbal,* 556 U.S. at 686.

Nor are the allegations that Ms. Carol Fertig experienced identity theft sufficient to state a claim for Falkenberg.  Even leaving aside the fact that the plaintiffs simply disregarded this Court's clear instructions that they must move for leave before attempting to add Ms. Fertig to the complaint, a putative class action complaint is subject to dismissal where *the named plaintiff* fails to allege that he or she has personally been injured – the named plaintiff cannot rest his or her standing on alleged injuries sustained by members of the proposed class.  *O'Shea v. Littleton,* 414 U.S. 488, 494 (1974); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003); *see Warth v. Seldin,* 422 U.S. 490, 509 (1975).

4.    Plaintiffs State No Claim With Respect to Ingargiola

Nor do plaintiffs successfully state a claim under the CMIA with respect to plaintiff Steven Ingargiola.  Plaintiffs' bare-bones allegations with respect to Ingargiola are that: (1) his CMI was contained on the stolen Alere computer; (2) at some point after the theft of the computer, Ingargiola experienced identity theft through the opening of a single fraudulent account in his name; and (3) Ingargiola had never experienced identity theft before, so (4) the identity theft "likely resulted" from the theft of the Alere computer.  (FAC, ¶¶ 44-49.)

19674391v1

1    Plaintiffs offer no additional factual context suggesting a causal link between the single

2  fraudulent account purportedly opened in Ingargiola's name and the theft of the Alere computer.

3  Plaintiffs' purported claim rests entirely on the logical fallacy *post hoc ergo propter hoc*.[1]

4    Both the Ninth Circuit and the California state courts, as well as courts in other

5  jurisdictions, have held that mere temporal proximity, without more, is not sufficient to state a

6  claim, particularly following the Supreme Court's opinions in *Twombly* and *Iqbal*.  *Huskey,* 204

7  F.3d at 899 (retaliation); *Schneider v. Sutter Amador Hosp.,* -- F.Supp.3d --, 2014 WL 5473545,

8  *12-13 (E.D. Cal. 2014); *Steshenko v. Gayrard,* -- F.Supp.3d --, 2014 WL 4904424, *10 (N.D.

9  Cal. 2014); *Barrett v. Dickerson,* -- F.Supp.3d --, 2014 WL 3725290, *5 (N.D. Cal. 2014);

10  *Sessoms v. Williamson*, 2014 WL 555317, *2 (N.D. Cal. 2014); *see Chuisano v. Secy. of Health

11  & Human Servs.,* -- Fed. Cl. --, 2013 WL 6234660, *14 (Fed. Cl. 2013) ("a sequence of events

12  does not establish causation"); *Doe v. Green*, 593 F.Supp.2d 523, 539 (W.D.N.Y. 2009)

13  (conspiracy claim); *Surabian v. HSBC Bank USA, NA,* -- F.Supp.3d --, 2014 WL 1035235, *3

14  (D. Mass. 2012) (theft of property); *see also Guinn v. AstraZeneca Pharm., LP,* 602 F.3d 1245,

15  1254 (11th Cir. 2010) ("Temporal proximity is generally not a reliable indicator of a causal

16  relationship"); *Abbott v. Federal Forge, Inc.,* 912 F.2d 867, 875 (6th Cir. 1990) ("*post hoc, ergo

17  propter hoc* is not a rule of legal causation").

18    Placing the plaintiffs' allegations with respect to Ingargiola in their factual context makes

19  it evident just how implausible their conclusory allegation of *post hoc* causation is.  Plaintiffs

20  allege that since Ingargiola purportedly suffered identity theft sometime after the Alere computer

21  was stolen, the two incidents must have been connected.  But according to the Justice

22  Department, *approximately 16.6 million persons* – 7% of all U.S. residents aged 16 or older –

23  experienced one or more incidents of identity theft in 2012 alone.  Erika Harrell & Lynn

24  Langton, *Victims of Identity Theft 2012,* U.S. Dept. of Justice Bureau of Justice Statistics, p. 1.

25

26

27

---

[1]  "After this, therefore because of this."  *Huskey v. City of San Jose,* 204 F.3d 893, 899 (9th Cir. 2000).

28

Sedgwick

Nearly seven million victims – more than forty percent of the total – were aged fifty or older. *Id.,* p. 3.[2]

Further, incidents of data privacy breaches are increasingly common in our data-driven society.  According to the Open Security Foundation, 2012 was a record year for such incidents, more than doubling the previous high with 2,644 separate data security breaches potentially impacting 267 million records.  Open Security Foundation, *Data Breach Quick View,* p. 1.[3] Approximately 14.4% of the breaches impacted Social Security numbers, or non-U.S. equivalents; 9.4% involved medical information; and 7.4% involved account details.  *Id.,* p. 5. High-profile data breaches in 2012 alone occurred at Wyndham Hotels, Global Payments (an online transaction processor), Nationwide Insurance and Allied Insurance Companies, and the California Department of Social Services.

For plaintiffs' bare allegation of *post hoc* causation to rise from the level of the merely possible to the *plausible* – which it must in order to survive a motion to dismiss – both the identity theft and the data breach must be comparatively rare.  But in fact, neither event is rare. The mere fact that an individual experiences an incident of identity theft in a particular year does not by itself suggest a connection to any particular data breach.  Nor, given that 267 million records were impacted by data breaches in 2012 alone, does a single fraudulent account plausibly suggest a connection to the theft of the Alere laptop, as opposed to any number of other data security risks.  Indeed, based upon the Justice Department's report that approximately 7% of all Americans aged 16 or older experienced at least one episode of identity theft in 2012, if we chose a group of 116,000 persons entirely at random, we would expect to find that *over 8,000* members of the random class experienced identity theft in 2012.  The plaintiffs' allegation that two members of their proposed class were victimized does not remotely approach stating a plausible claim for relief.  *Regents,* 220  Cal.App.4[th] at 570, n. 15 (refusing to permit amended complaint based on alleged episode of identity theft since "too many layers of speculation"

---

[2]     Available at http://www.bjs.gov/index.cfm?ty=pbdetail&iid=4821

[3]     Available at http://www.riskbasedsecurity.com/reports/2012-DataBreachQuickView.pdf.

19674391v1

1    separate alleged event and data breach).  A complaint stating facts that are merely consistent with

2    liability stops short of the line between possibility and plausibility of entitlement to relief, and is

3    subject to dismissal.  *Somers,* 729 F.3d at 960; *Hartmann,* 707 F.3d at 1121-22; *Brantley,* 675

4    F.3d at 1198.

5          Because the plaintiffs rest their complaint with respect to Mr. Ingargiola on mere

6    temporal proximity and nothing more, the Court is "faced with two possible explanations, only

7    one of which can be true and only one of which results in liability."  *In re Century Aluminum Co.*

8    *Securities Litig.*, 729 F.3d at 1108.  Therefore, in order to render the plaintiffs' allegations

9    plausible, "[s]omething more is needed, such as facts tending to exclude the possibility that the

10   alternative explanation" (that Mr. Ingargiola's difficulties with the alleged fraudulent account

11   had nothing to do with the theft of the Alere laptop) "is true."  Plaintiffs offer no such

12   allegations, so it follows that their *post hoc* allegations are inadequate to plausibly state a claim

13   as a matter of law.

14         Presumably, plaintiffs improperly included their allegations about Ms. Carol J. Fertig,

15   purported member of the proposed class, in hopes of supporting the claims of the named

16   plaintiffs, but in fact, those allegations show how implausible plaintiffs' theory is.  It has now

17   been nearly two years since the password-protected Alere laptop computer was stolen.  In that

18   time, of the 116,000 individuals whose CMI was on the laptop's hard drive, plaintiffs allege *only*

19   *two have reported any kind of unusual difficulties at all.*  Far from making the plaintiffs'

20   proposed causation inference plausible, the almost complete absence of unusual activity shows

21   that there is no connection between the incidents involving Ingargiola and Ms. Fertig and the

22   laptop theft.

23         Neither of the plaintiffs have sufficiently stated a claim for relief under the CMIA.  The

24   motion to dismiss should be granted.

25         5.    Plaintiffs' CMIA Claim Also Fails Because They Have Not Plead And
               Cannot Prove Injury
26

27         Section 56.36(b) is not a strict liability statute, but instead applies only to "any person or

28   entity who has ***negligently released*** confidential information or records . . . ."  (Emphasis added).

19674391v1

1    Thus, in order to allege a claim against Alere under the CMIA, plaintiffs must also plead and

2    prove that Alere was negligent, which, among other elements, requires a showing of actual

3    injury.[4]  *See Duarte v. Zachariah*, 22 Cal. App. 4th 1652, 1661 (1994) ("'[A]ctual damage' in the

4    sense of 'harm' is necessary to a cause of action in negligence; nominal damages are not

5    awarded.").

6          Actual injury occurs when there is harm to another.  *Id.*  Actual injury does not include

7    speculative harm or the future threat of harm, nor is it a harmless invasion of a legally protected

8    interest.  *Aas v. Super. Ct.,* 24 Cal. 4th 627, 646 (2000) ("speculative harm or the threat of future

9    harm does not normally suffice to create a cause of action"); *Fields v. Napa Milling Co.*, 164

10   Cal. App. 2d 442, 447-48 (1958) ("It is fundamental that a negligent act is not actionable unless

11   it results in injury to another . . . Nominal damages, to vindicate a technical right, cannot be

12   recovered in a negligence action, where no actual loss has occurred.") (citing Prosser on Torts,

13   2d ed., p. 165).

14         Here, plaintiffs do not identify any actual damages that they suffered as a result of

15   Alere's purported negligence.  Plaintiffs claim that their harm includes: (1) emotional distress;

16   (2) loss of and invasion of privacy; (3) loss of property; and (4) loss of control of their

17   confidential health and medical information.  (FAC, ¶¶ 11-12.)  None of these constitutes an

18   injury under a negligence theory.

19         First, emotional distress is commonly recognized as an injury that, unless linked to a

20   physical injury, is not actionable.  *Potter v. Firestone Tire and Rubber Co.*, 6 Cal. 4th 965, 985

21   (1993) (no recovery for emotional distress unless "a breach of the duty [threatens] physical

22   injury, not simply damages to property or financial interests"); *Duarte*, 22 Cal. App. 4th at 1664

23   ("[D]amages ordinarily may be recovered for emotional distress naturally ensuing from an

---

[4]   Alere anticipates that plaintiffs will argue no injury-in-fact is required to state a claim and
that, in any event, plaintiffs' bare allegation of a release in violation of the CMIA is sufficient to
establish an injury.  Plaintiffs are mistaken.  If the Legislature had intended that no injury was
required or that violation of the statute is sufficient to establish injury, it would not have used any
modifier to limit "released . . . in violation of."  Plaintiffs' argument thus runs afoul of the rule of
construction "that every word in a statute is presumably intended to have some meaning and that
a construction making some words surplusage is to be avoided."  *Watkins v. Real Estate
Comm'r,* 182 Cal. App. 2d 397, 400 (1960).

Sedgwick℠

1    actionable physical injury.").  Plaintiffs do not allege that they have any physical injuries – and

2    indeed they plausibly cannot – and thus this claim for emotional distress damages cannot support

3    a negligence cause of action.

4        Second, damages relating to plaintiffs' privacy and control of their confidential health

5    and medical information are not actionable.  Although plaintiffs allege that Mr. Ingargiola

6    experienced an incident of identity theft, they allege no actual damages he purportedly sustained

7    as a result.  In considering similar allegations in other data breach cases, courts have held that,

8    without more, intangible loss-of-control "damages" are insufficient to state a claim for

9    negligence.  *See, e.g., Krottner v. Starbucks Corp.,* 406 Fed. App'x. 129, 131 (9th Cir. 2010)

10   (affirming dismissal of negligence claim based on danger of future harm under Washington

11   Law); *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 913, *aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010)

12   (holding that an increased risk of future identity theft "does not rise to the level of appreciable

13   harm necessary to assert a negligence claim under California law").   *See also Pisciotta v. Old*

14   *Nat'l Bancorp*, 499 F.3d 629, 639 (7th Cir. 2007) ("without more than allegations of increased

15   risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to

16   remedy").

17       These alleged injuries raise issues similar to those evaluated by the Supreme Court of

18   California when considering "fear of cancer" allegations, where the court held that a claim based

19   on a person's knowledge that his risk of cancer had been significantly increased by a toxic

20   exposure, without a showing of the actual scientific likelihood, was wholly speculative and

21   recovery should not be permitted on that basis.  *Potter*, 6 Cal. 4th at 990.  The court reasoned

22   that everyone is exposed to carcinogens on a daily basis, and that therefore the pool of potential

23   "fear of cancer" patients was enormous.  *Id.*  Additionally, allowing such claims to proceed

24   would have a tremendous social cost and, in the absence of meaningful restrictions, would

25   increase the costs and availability of insurance coverage and medical treatment.  *Id*. at 990-993.

26   The court further reasoned that liability for this fear should be limited because of "the intangible

27   nature of the loss, the inadequacy of monetary damages to make whole the loss, the difficulty in

28

1   measuring the damage, and the societal cost of attempting to compensate the plaintiff."  *Id*. at

2   994.

3          The same logic applies to plaintiffs' alleged damages in the instant case.  Personal

4   information is widely disseminated in this day and age, and while a person may put himself at

5   risk for identity theft every time he offers his credit card to make a purchase, a fear of theft or

6   loss of control of this information cannot reasonably be recoverable.  Furthermore, there would

7   be crushing societal costs if defendants were forced to compensate an individual whose personal

8   information was technically available or accessible to a third party, even though it was never

9   viewed or used.  This would also impact on the expense and ability to provide vital medical

10  services.  If recovery for such "injury" were allowed, every time a person walked into an office

11  containing medical information could be the spark for a lawsuit.

12         Finally, plaintiffs claim they were injured by Alere's alleged negligence because they

13  have lost "property."  However, nowhere in their complaint do they identify any property, let

14  alone allege how it was lost.  Without more, this loss is merely speculative and insufficient to

15  state a cause of action.  *Aas*, 24 Cal. 4th at 646.  *See, e.g., Ruiz v. Gap, Inc.*, 540 F. Supp. 2d

16  1121, 1127 (2008), *aff'd*, 380 Fed. App'x. 689 (9th Cir. 2010) (holding that unauthorized release

17  of personal information did not constitute loss of property).

18         Because plaintiffs must plead and prove injury, and consequently negligence, in order to

19  assert a claim under the CMIA, and they cannot, plaintiffs' claims under Civil Code section

20  56.36(b) fail as a matter of law.

21  **V.     PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF THE FCRA**

22         Plaintiffs' second and third causes of action allege that Alere violated the FCRA.

23  However, plaintiffs fail to state a claim under the FCRA for two reasons.

24         First, Alere is not a "consumer reporting agency" subject to the statute.  The FCRA

25  defines "consumer reporting agency" as: "any person which, for monetary fees, dues, or on a

26  cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or

27  evaluating consumer credit information or other information on consumers for the purpose of

28  furnishing consumer reports to third parties, and which uses any means or facility of interstate

19674391v1

1    commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

2        Just as they did in the original Complaint, plaintiffs allege that Alere qualifies as a

3    consumer reporting agency because the CMI Alere maintains is "other information" within the

4    meaning of § 1681a(f).  (FAC, § 74.)  As the Court found in its order dismissing the original

5    complaint, the plaintiffs' interpretation of "other information" under the statute is so expansive

6    as to arguably encompass *any* information about consumers.  No authority has ever held that the

7    FCRA is intended to apply so broadly.  The maxim of *ejusdem generis* suggests that "other

8    information" has a far more narrow scope, limited to information similar to "consumer credit

9    information."  Order of Dismissal, Dkt. No. 46, pp. 5-6.

10       Second, the personal and medical information maintained by Alere is not a "consumer

11   report" within the meaning of the statute.  Under the FCRA, a "consumer report" is: "any

12   written, oral, or other communication of any information by a consumer reporting agency

13   bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general

14   reputation, personal characteristics, or mode of living which is used or expected to be used or

15   collected in whole or in part for the purpose of serving as a factor in establishing a consumer's

16   eligibility for – (A) credit or insurance to be used primarily for personal, family, or household

17   purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of

18   this title."  15 U.S.C. § 1681a(d)(1).

19       Plaintiffs allege that information provided by Alere to physicians and insurance providers

20   constitutes a "consumer report" because such information is used to determine whether the

21   patient's insurance covers Alere's products and services.  (FAC, ¶¶ 77-85.)  But such routine

22   communications occur between physicians and medical providers and insurers every day.  If

23   such routine communications were "consumer reports" within the meaning of the statute, then

24   the FCRA would be potentially applicable to nearly every physician and medical provider in the

25   country.  No court has ever so much as suggested that the statute has such an enormous scope.

26   Merely verifying the details of a patient's existing coverage does not constitute "establishing a

27   consumer's eligibility for . . . insurance" within the meaning of the FCRA.

28

1

## VI.    <u>CONCLUSION</u>

2

For the above stated reasons, Alere respectfully requests that the Court grant its motion to

3

dismiss, and dismiss plaintiffs' class action complaint without leave to amend.

4

DATED:  November 17, 2014                    SEDGWICK LLP

5

6

By:/s/ *Stephanie Sheridan*

STEPHANIE SHERIDAN

7

Attorneys for Defendant

ALERE HOME MONITORING, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28